A02A1575. IN THE INTEREST OF K. C. H., a child.
(571 SE2d 515)

MILLER, Judge.

The mother of minor K. C. H. appeals from the juvenile court order finding K. C. H. to be deprived and ordering that the child be committed to the temporary custody of the Georgia Department of Human Resources, acting through the Morgan County Department of Family & Children Services (the "Department"), until further order of the court. She contends that (1) venue and jurisdiction were

improper in Morgan County, and (2) the deprivation finding of the juvenile court was not supported by clear and convincing evidence. We discern no error and affirm.

On appeal from a finding that a child is deprived,

> we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the [child was] deprived. . . . This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.

(Citations and punctuation omitted.) *In the Interest of S. S.*, 232 Ga. App. 287, 289 (501 SE2d 618) (1998). As defined in OCGA § 15-11-2 (8) (A), a deprived child is a child who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals. . . ." In considering a deprivation petition, "[t]he petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue." (Citation and punctuation omitted.) *In the Interest of J. P.*, 267 Ga. 492 (480 SE2d 8) (1997).

The record reveals that, following a September 18, 2001 deprivation hearing, six-year-old A. C. and four-year-old J. C., the mother's two children at the time, were placed in the temporary legal custody of the Department based on the juvenile court's finding that A. C. had been molested by the mother's live-in boyfriend. The court ordered that no reunification plan would be completed for the family until such time as the boyfriend moved out of the residence. The mother did not believe that her boyfriend had molested A. C., and the boyfriend did not move out of the house. The mother, who subsequently married the boyfriend, was pregnant with the couple's child, K. C. H., at the time of the September 18 hearing.

On November 24, 2001, the day before K. C. H. was born, the mother and father went to South Carolina to see some of the father's relatives. Although the mother later claimed that she and her husband were moving to South Carolina on that day, neither the mother nor her husband informed the Department of any planned move to South Carolina prior to the trip. A Department caseworker had visited the mother at her residence in Morgan County on several occasions, and on her meeting with the mother a week prior to the mother's trip to South Carolina, the mother made no mention of any intention to move to South Carolina. The couple went to South Carolina without informing their landlord in Georgia that they were mov-

ing and without requesting that their utilities be shut off at their Georgia address.

The mother was admitted to a hospital in Anderson, South Carolina, on November 25, 2001, where she gave birth to K. C. H. The home address given for the mother on her hospital admission records was her Madison, Georgia, address.

Despite the mother's objection to venue and jurisdiction with respect to K. C. H., the Morgan County Juvenile Court on November 27, 2001, granted a shelter care order based on the father's continued residence with the mother and the father's history as an alleged sexual predator. The juvenile court confirmed the findings of the shelter care order following a November 29, 2001 informal detention hearing. The court continued temporary custody of K. C. H. and approved the filing of a deprivation petition as being in the child's best interest. The deprivation petition was filed on December 4, 2001.

At the December 11, 2001 deprivation hearing, a case manager testified that she was concerned about K. C. H.'s safety in light of the prior judicial finding that K. C. H.'s father had molested A. C., and the mother's failure to give any indication that she would be separating from her husband. A caseworker also testified that the Department elected to remove K. C. H. from the custody of her parents based on the known threat posed to the child by the mother's husband, and the husband's continued presence in the home. The mother testified that she did not have any concerns about leaving K. C. H. with her husband.

The juvenile court found by clear and convincing evidence that K. C. H. was deprived, placed K. C. H. in the Department's custody, and further ordered that the Department develop a reunification plan. The mother appeals from this order.

1. The mother argues that venue and personal and subject matter jurisdiction were improper in Morgan County as to K. C. H., because the mother had moved to South Carolina the day before K. C. H. was born. However, we affirm the trial court's finding of jurisdiction, as evidence supported the trial court's finding that K. C. H. and her parents still resided in Morgan County when K. C. H. was born, and K. C. H. was already in the Department's custody in Morgan County for purposes of venue when the deprivation proceedings were commenced. See OCGA §§ 15-11-28 (a) (1) (C); 15-11-29 (a).

2. The mother contends that the finding of deprivation with respect to K. C. H. was not supported by clear and convincing evidence. We disagree.

Pursuant to the September 18, 2001 deprivation order with respect to A. C. and J. C., the mother was placed on notice that her boyfriend (now husband) was a threat to her children, as clear and

convincing evidence convinced the court that he had molested her six-year-old daughter. The order also indicated that the mother would only be reunited with her children after such time as she removed the man from her home. At the time, the mother was pregnant with K. C. H.

Instead of heeding the court's order and acting in the best interests of her children to take steps to have the family reunited, the mother acted completely contrary to the court's order by allowing the man to continue living with her. Despite the knowledge of the threat that he posed to her underdeveloped six-year-old daughter, the mother chose to allow the man to remain in the home at the expense of not being reunited with her own children. She continued to choose this man, and the threat that he posed to her own underdeveloped daughter, even after she gave birth to another daughter who would be at risk to the man's known predatory behavior. We hold that clear and convincing evidence supported a finding that K. C. H. was deprived, as she was without proper parental "care or control necessary for the child's physical, mental, or emotional health. . . ." OCGA § 15-11-2 (8) (A).

This case is distinguishable from *In the Interest of M. A. V.*, 206 Ga. App. 299 (1) (425 SE2d 377) (1992), overruled on other grounds, *J. P.*, supra, 267 Ga. at 493, cited by the mother. In that case, there was no evidence that the deprivation of one child bore any relation to any possible future deprivation of another child, as the child who was not deprived was living with appellant's parents, and "appellant uncontrovertedly [did] not intend to replace her parents as the child's caretaker in the future." 206 Ga. App. at 302 (1). Here, the September deprivation order made it clear that the mother's husband posed a threat to her children, and the mother made a choice to allow her newborn child to be exposed to a potentially dangerous predator despite her notice of the danger. The mother's own choices here with respect to K. C. H. show by clear and convincing evidence that K. C. H. was deprived.

*Judgment affirmed. Blackburn, C. J., and Johnson, P. J., concur.*

DECIDED SEPTEMBER 20, 2002.

*Moulton & Massey, Laura R. Gailey*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Assistant Attorney General, John R. Laseter*, for appellee.